# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

AMERICAN NATIONAL PROPERTY )
AND CASUALTY COMPANY, )
     **Plaintiff,** )
)
v. ) CIVIL ACTION NO. 1:19-00198-KD-N
)
GULF COAST AERIAL, LLC *f/k/a* )
*Gulf Coast Aerial Advertising, LLC,* )
*et al.,* )
     **Defendants.** )

## REPORT AND RECOMMENDATION

This action is before the Court on the motions to dismiss, stay, and/or abstain (Docs. 12, 17), and separate supporting memorandum (Doc. 13), filed by Defendants Leslie Fields, as administrator for the Estate of Bradley John LaFleur, deceased; Gulf Coast Aerial, LLC f/k/a Gulf Coast Aerial Advertising, LLC ("Gulf Coast"); and Richard Michael Collins.[1]  The assigned District Judge referred the motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a).  *See* S.D. Ala. GenLR 72(b); (5/21/2019 & 5/31/2019 electronic references).  Plaintiff American National Property and Casualty Company ("American National") filed separate responses (Docs. 23, 24) in opposition to the motions,[2] and Fields filed a reply (Doc. 25) to the response to her motion.  The motions are now under submission.  (*See*

---

[1] Gulf Coast and Collins's motion (Doc. 17) adopts the reasoning in Fields's motion and memorandum (Docs. 12, 13).

[2] American National's response to GCA and Collins's motion (Doc. 24) adopts the reasoning in its earlier filed response to Fields's motion (Doc. 23).

Doc. 22). Upon consideration, the undersigned finds that the Defendants' motions are due to be **GRANTED in part** and **DENIED in part**.

## I. *Background*

American National initiated this declaratory judgment action by filing a complaint (Doc. 1) with the Court on April 18, 2019. In response to the Court's order directing it to correct certain deficiencies in its allegations demonstrating subject matter jurisdiction (Doc. 7), American National filed its Amended Complaint for Declaratory Judgment (Doc. 10),[3] which is currently the operative complaint in

[3] It is well established that the federal "Declaratory Judgment Act is procedural only[,] enlarg[ing] the range of remedies available in the federal courts but … not extend[ing] their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (citation and quotation omitted). However, the amended complaint adequately alleges facts demonstrating that there is complete diversity of citizenship as required for subject matter jurisdiction to attach under 28 U.S.C. § 1332(a). No defendant challenges those allegations, and the undersigned finds no reason to question them *sua sponte* at this time. American National, a corporation, is deemed a citizen of Missouri because it was both incorporated under that state's law and has its principal place of business there, *see* (Doc. 10, ¶ 3); 28 U.S.C. § 1332(c)(1), and no defendant is also a citizen of Missouri. Defendant Collins is domiciled in, and therefore a citizen of, Alabama. *See* (Doc. 10, ¶¶ 4 – 5); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." (citations, quotations, and footnote omitted)). Defendant Gulf Coast, a limited liability company, is deemed a citizen of Alabama because both of its natural person members are citizens of Alabama. *See* (Doc. 10, ¶ 4); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004) (per curiam) ("[F]or purposes of diversity of citizenship,…a limited liability company is a citizen of any state of which a member of the company is a citizen…To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company..."). Finally, Fields is deemed a citizen of Alabama because the decedent whose estate she represents was a citizen of Alabama. *See* (Doc. 10, ¶ 6); 28 U.S.C. § 1332(c)(2) (For purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent…").

The Defendants do question whether § 1332(a)'s requisite minimum amount in controversy is satisfied. The undersigned will address that claim later in this recommendation.

this action.[4]    The Amended Complaint seeks a declaration of rights as to American National's duty to defend and indemnify its insureds in a wrongful death action pending in the Circuit Court of Baldwin County, Alabama (Case No. 05-CV-2018-901313) (hereinafter, "the State Court Action"), under an aircraft insurance policy (Policy No. AC-03158-00) (hereinafter, "the Policy") issued to Gulf Coast "and its individual executive officers and members" providing coverage for two of Gulf Coast's aircraft.[5]    The State Court Action was brought against Gulf Coast and its managing member Collins by Fields as administrator of the estate of decedent LaFleur, who was killed in an airplane crash that occurred shortly after takeoff in Foley, Alabama, on August 4, 2018.[6]    The pilot of the airplane, who was also killed, is alleged to have been acting as an employee of Gulf Coast at the time of the crash.    American National claims that neither Gulf Coast nor Collins is due coverage under the subject policy because of an exclusion for "bodily injury" to

---

[4] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' "    *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)).    *See also, e.g., Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

[5] A copy of the Policy is attached to the Amended Complaint as Exhibit A.    *See* (Doc. 10-1); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

[6] Fields has attached a copy of the State Court Action complaint (Doc. 13-1) to her motion.    *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

"passengers" that occurs when an insured aircraft is engaged in "aerial advertising," as those terms are defined in the subject policy.[7]

## II.  *Analysis*

### A.  Ripeness

The Defendants first argue that American National's duty-to-indemnify declaratory judgment claim is not ripe for adjudication because the insureds have not yet been held liable in the State Court Action.   In making this argument, the Defendants do not make clear whether they are asserting that the Court lacks subject matter jurisdiction over the claim because it is not ripe for purposes of Article III justiciability, that the Court should exercise discretion to not hear it due to prudential considerations, or both.[8]

In *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d 453 (5th Cir. 1960), the former Fifth Circuit Court of Appeals affirmed a district court's dismissal of a

---

[7] While there is no indication that LaFleur was an insured under the Policy, Fields could make a claim on the Policy if she prevails in the State Court Action.   *See Wiggins v. State Farm Fire & Cas. Co.*, 686 So. 2d 218, 220 (Ala. 1996) ("The injured party … can bring an action against the insurer only after he has recovered a judgment against the insured and only if the insured was covered against the loss or damage at the time the injured party's right of action arose against the insured tort-feasor." (quotation omitted)).

[8] "The ripeness doctrine involves consideration of both jurisdictional and prudential concerns.   Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review.   Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint. []The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. The doctrine seeks to avoid entangling courts in the hazards of premature adjudication."   *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citations and quotations omitted).

duty-to-indemnify declaratory judgment claim where the underlying civil action was still pending against the insureds, noting that such a "request sought a declaration on a matter which might never arise." 280 F.2d at 461.[9] The panel further stated: "[I]t is not the function of a United States District Court to sit in judgment on … nice and intriguing questions which today may readily be imagined, but may never in fact come to pass. The mandatory obligation of a District Court to accept and determine a suit for declaratory relief is not commensurate with the full scope of a 'case or controversy' within the constitutional sense … The District Court was careful to make his dismissal without prejudice to those further rights, and it was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass." *Id.*

While this holding from *American Fidelity & Casualty* was couched in terms of "judicial discretion" to decline to hear a declaratory judgment action, another former Fifth Circuit panel later characterized it in more absolute terms, citing *American Fidelity & Casualty* as holding "that no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest such as the one at bar until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize."

---

[9] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

*Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971). *See also Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. Unit B Apr. 6, 1981) (citing *American Fidelity & Casualty* and a 1972 Fifth Circuit case, without explanation, in support of the following statement: "This circuit has held that the district courts lack jurisdiction to express legal opinions based upon hypothetical or academic facts."). Arguably, though, *Allstate Insurance Co.*'s broad statement can be considered non-binding dicta, since in the next sentence the *Allstate Insurance* panel found that there was "no question … that such a judgment ha[d] been rendered establishing liability" in that case. *Allstate Ins. Co.*, 445 F.2d at 1281. *See also Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 771 (11th Cir. 2019) (per curiam) (unpublished) (characterizing as dicta *Allstate Insurance*'s characterization of *American Fidelity & Casualty*).[10]

Moreover, in *Edwards v. Sharkey*, 747 F.2d 684 (11th Cir. 1984), a panel of the Eleventh Circuit Court of Appeals, while noting that *American Fidelity & Casualty* had "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured[,]" nevertheless recognized that "[t]his caution … is predicated on the traditional discretion of federal courts exercising jurisdiction over declaratory judgment

---

[10] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

actions." 747 F.2d at 686 (citing *Am. Fid. & Cas.*, 280 F.2d at 461).[11] Arguably, that statement is also dicta, since the panel also held that "even if there was no 'case or controversy' before the district court because of the lack of a judgment against the insured, the settlement of the tort actions provides the necessary establishment of the insured's liability." 747 F.2d at 687.[12] However, *Edwards*'s view of *American Fidelity & Casualty* was recently reaffirmed in *Mid-Continent Casualty Company*, in which an Eleventh Circuit panel affirmed a district court's dismissal of a duty-to-indemnify declaratory judgment as unripe, stating:

> In our view, the district court did not abuse its discretion in concluding that MCC's duty (or lack of a duty) to indemnify Delacruz is unripe. *See Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960). We have not directly addressed whether it is appropriate for a district court to assess an insurer's duty to indemnify before the underlying lawsuit is resolved. We have considered the issue, however, in an unpublished opinion. *See J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014) ("The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims.") (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) ).

> As the district court noted in its order, many district courts in this circuit have ruled that an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established. *See Mid-Continent Cas. Co. v. G.R. Constr. Mgmt., Inc.*,

---

[11] *Edwards* also noted that "the Supreme Court of the United States has held that a 'case or controversy' exists to support declaratory relief between an injured third party and an insurance company even in the absence of a judgment in favor of the third party against the insured." 747 F.2d at 686–87 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1940)).

[12] *See Associated Indus. Ins. Co. v. Four Four, LLC*, No. 2:17-CV-103-WKW, 2018 WL 2946397, at *3 (M.D. Ala. June 12, 2018) (characterizing the foregoing statement from *Edwards* as dicta).

278 F. Supp. 3d 1302, 1306 (M.D. Fla. 2017); *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1153 (S.D. Fla. 2015); *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1372–73 (N.D. Ga. 2009); *Northland Cas. Co.*, 160 F. Supp. 2d at 1360; *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1514–15 (M.D. Ala. 1996). Our fellow circuit courts have applied the same rule. *See, e.g.*, *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit.").

We agree with these cases and the district court's conclusion that MCC's duty to indemnify Delacruz is not ripe for adjudication until the underlying lawsuit is resolved. Indeed, the former Fifth Circuit in *American Fidelity & Casualty Co.*, 280 F.2d at 461, held that a declaratory judgment action concerning an apportionment issue between insurers was not ripe until the insured's liability was established because the issue "might never arise." It ruled that the district court did not abuse its discretion by dismissing the insurer's complaint without prejudice because "[t]he damage suits had never been tried[,] [n]o one had yet paid or become legally liable to pay[, and] [w]hether anything will be paid or be legally payable, no one, on this record, yet knows." *Id.* at 457–58. And "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Id.* at 461. *See also Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) (stating, in dicta, that "no action for declaratory relief will lie to establish an insurer's [priority] ... until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize").

766 F. App'x at 770–71 (footnote omitted).

Considering the foregoing authorities, the undersigned finds that an insurer's duty-to-indemnify declaratory judgment claim is not ripe until a final judgment has been entered against the insured, but that such unripeness does not deprive a federal court of subject matter jurisdiction over that claim for lack of a "case or

controversy" under Article III of the U.S. Constitution. *See GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995) ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." (citation and quotations omitted)); *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949) ("It is settled that where there is an actual controversy over rights [that meet the requisite jurisdictional amount in controversy], whether contingent or liquidated, a declaratory judgment may be rendered i [sic] the Federal Court."). Instead, the foregoing authorities indicate a strong preference in the Eleventh Circuit for declining to hear such unripe claims under discretionary prudential concerns.[13] *Accord Employers Mut. Cas. Co. v. All*

_____

[13] This discretionary preference can be likened to that concerning district courts' discretion to decline to continue exercising supplemental jurisdiction over remaining claims after "the district court has dismissed all claims over which it has original jurisdiction…" Section 1367(c)(3) only provides that district courts "may" decline supplemental jurisdiction in such circumstances, and the Eleventh Circuit has held that a district court "has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction, but is not required to dismiss the case." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Nevertheless, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). *See also Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("Discretion over pendant state claims is expressly conferred to district courts by statute. 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.' More specifically, this Court has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).").

*Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1210–11 (S.D. Ala. 2005) (Steele, J.) ("Although *American Fidelity* does not preclude jurisdiction over an insurer's declaratory action brought to determine its indemnity obligations before its insured has been cast in judgment, it counsels strongly against the exercise of jurisdiction in such circumstances."); *Pa. Lumbermens Mut. Ins. Co. v. D.R. Horton, Inc.-Birmingham*, Civil No. 15-0071-WS-B, 2016 WL 70843, at *4 (S.D. Ala. Jan. 5, 2016) (Steele, J.) ("The lesson from *American Fidelity* is that courts are 'cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured.' " (quoting *Edwards*, 747 F.2d at 686)). The undersigned finds such abstention appropriate in this case, especially where, as is explained later in this report, factual disputes material to determining the duty to indemnify are also likely to arise in the underlying action.

## B.    Amount in Controversy

The Defendants next argue that American National's duty-to-defend claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because American National cannot satisfy § 1332(a)'s requisite minimum amount in controversy, asserting "[t]here is no showing, nor could there be, that th[e] attorneys' fees [incurred to defend Gulf Coast and Collins in the state court action] will be at least $75,000, especially given that the face amount of the limits of coverage under the policy is just $100,000."   (Doc. 13 at 6).

In pressing this argument, the Defendants erroneously assume that each individual claim must independently satisfy the requisite amount in controversy.

All parties correctly recognize that, "for amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective. Stated another way, the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation and quotations omitted). "While absolute certainty is neither attainable nor required, the value of declaratory or injunctive relief must be sufficiently measurable and certain to satisfy the amount-in-controversy requirement. That requirement is not satisfied if the value of the equitable relief is too speculative and immeasurable. It is a matter of degree." *Id.* at 1316 (citations and quotations omitted).

When, as here, "an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of *potential* liability under its policy." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 865 (11th Cir. 2016) (per curiam) (unpublished) (citing *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) (per curiam)).[14] Therefore, in such cases, "the amount in controversy include[s]

---

[14] "Generally, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. However, where jurisdiction is based on a claim for indeterminate damages, the … 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th

both the insurance company's potential liability and attendant costs associated with defending an underlying action against the insured."   *Id.* (citing *Stonewall Ins. Co.*, 544 F.2d at 199).   Moreover, the value of this declaratory relief is "sufficiently measurable and certain."   The per-person limit on coverage for bodily injury under the subject policy is $100,000 (*see* Doc. 10-1 at 3), and given that the State Court Action involves claims for wrongful death under theories of negligence and wantonness under Alabama law, *see* (Doc. 13-1); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064-66 (11th Cir. 2010) (discussing Alabama's Wrongful Death Act and finding that "judicial experience and common sense" indicated that the value of claims under the Act "more likely than not exceeds the minimum jurisdictional requirement"),[15] it is more likely that not that American National's potential

_____

Cir. 2003) (citation and quotation omitted).

[15]

> [Alabama's Wrongful Death] Act allows the representative of a decedent's estate to recover damages from a person or corporation whose "wrongful act, omission, or negligence" resulted in the death of the decedent, provided the decedent "could have commenced an action for such wrongful act, omission, or negligence if it had not caused death." Ala. Code § 6–5–410.

> The statute's goal is to prevent death, not to compensate for the loss of human life, which Alabama believes possesses a value "beyond measure." *See Campbell*[ *v. Williams*], 638 So. 2d [804,] 811[ (Ala. 1994)]. Thus, a Wrongful Death Act plaintiff may recover only punitive, rather than compensatory, damages. Id. at 809. This limitation, however, does not mean that plaintiffs' recoveries must be modest. In fact, the Wrongful Death Act "attempt[s] to preserve human life by making homicide expensive." *Id.* at 810 (emphasis added) (quoting *Louis Pizitz Dry Goods Co. v. Yeldell*, 274 U.S. 112, 115–17, 47 S. Ct. 509, 510, 71 L. Ed. 952 (1927)).

liability exceeds $75,000, exclusive of interests and costs. Accordingly, the Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is due to be denied.

## C. *Brillhart-Wilton* Abstention

Finally, the Defendants argue that the Court should exercise its discretionary authority to abstain from hearing this declaratory judgment action to allow the issues to be resolved in the pending State Court Action (sometimes called *Brillhart-Wilton* or *Wilton-Brillhart* abstention, after the two Supreme Court cases from which the doctrine derives).

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton*[ *v. Seven Falls Co.*], 515 U.S. [277,] 287, 115 S. Ct. 2137[, 132 L. Ed. 2d 214 (1995)] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942). In fact,…the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S. Ct.

---

In calculating a damage award, an Alabama Wrongful Death Act jury is instructed to consider: (1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's. *Tillis Trucking*[ *Co., Inc. v. Moses*], 748 So. 2d [874,] 889[ (Ala. 1999)]. In assessing punitive damages, the worse the defendant's conduct was, the greater the damages should be. *See Ala. Power Co. v. Turner*, 575 So. 2d 551, 554–55 (Ala.1991); *Alabama Pattern Jury Instructions: Civil* 11A.28 (2d ed.)

*Roe*, 613 F.3d at 1065.

1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id*. This warning should be heeded.

Guided by the[] general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, [the Eleventh Circuit Court of Appeals has] provide[d] the following factors for consideration to aid district courts in balancing state and federal interests.

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether

federal common or statutory law dictates a resolution of the declaratory judgment action.

[This] list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (per curiam) (footnotes and some quotation marks omitted).

Because the Court can clearly abstain from hearing American National's duty-to-indemnify claim under prudential ripeness considerations, *see supra*, the undersigned finds it unnecessary to address whether the Court should alternatively abstain from hearing that claim under *Brillhart-Wilton* considerations.[16]  As for American National's duty-to-defend claim, the undersigned finds that the *Ameritas* factors do not favor abstention, at least at this juncture.[17]

Indisputably, the first and ninth *Ameritas* factors weigh in favor of abstention, as state law controls the substantive claims in both this federal action

---

[16] *See Mid-Continent Cas. Co.*, 766 F. App'x at 770 n.1 ("In *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 865–67 (11th Cir. 2016) (per curiam), we concluded that the district court erred by abstaining from exercising its jurisdiction in a declaratory judgment action because it failed to address the nine [*Ameritas*] factors that are relevant to abstention. Here, the district court found that MCC's duty to indemnify Delacruz was not ripe, so it did not need to address the abstention factors. *Excellent Computing* is therefore distinguishable.").

[17] Because *Brillhart-Wilton* abstention need not be addressed at all for one claim and is not warranted as to the other, at this time it is unnecessary to determine whether the State Court Action is truly "parallel" for purposes of the doctrine.  It is worth noting, however, that the Eleventh Circuit has stated: "[W]e have never held that the *Ameritas* factors apply only when reviewing parallel actions.  Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues.  Rather, the district court must weigh all relevant factors in this case, even though the state and federal actions were not parallel."  *Excellent Computing*, 648 F. App'x at 866.

and the underlying state court action. *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000), *as amended* (Jan. 30, 2001) ("The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." (citation and quotation omitted)); *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, No. CIV.A. 08-0455-WS-M, 2008 WL 5412937, at *2 (S.D. Ala. Dec. 29, 2008) (Steele, J.) (same). Given that this Court is routinely called upon to apply state law in cases before it under diversity of citizenship, however, these factors do not provide significant weight in favor of abstention, and the other factors weigh against abstention.

In Alabama,[18] " '[a]n insurer's duty to defend can be more extensive than its duty to pay.' " *Blackburn v. Fid. & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995) (per curiam) (quoting *Universal Underwriters Ins. Co. v. Youngblood*, 549

---

[18]    "In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies." *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims … The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the contract. *Cherry, Bekaert & Holland v. Brown,* 582 So. 2d 502, 506 (Ala. 1991). The doctrine states that 'a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.' *Id.*" *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). The place where a contract was "made" means "executed" (i.e., where the last act necessary to the execution of the contract occurred). See *Indus. Chem. & Fiberglass Corp. v. N. River Ins. Co.*, 908 F.2d 825, 829 n.3 (11th Cir. 1990) ("Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern interpretation of the contract. *Pines v. Warnaco, Inc.,* 706 F.2d 1173, 1176 n.3 (11th Cir. 1983). The last act necessary to the execution of the North River policies, the receipt and acceptance of the policies by the named insured, took place in New York.").
       The Policy does not appear to contain a choice-of-law provision, and nothing in the record indicates that Alabama law does not govern its interpretation.

So. 2d 76, 78 (Ala. 1989)).   The Alabama Supreme Court has "summarize[d] the law for determining the existence or nonexistence of an insurer's duty to defend" as follows:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence.

*Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003).   In other words, the "analysis of whether [the insurer] has a duty to supply a defense for [the insured] in [the injured person]'s action against it is two-pronged. First we must determine whether the facts alleged in [the] complaint state an occurrence within the meaning of the policy. Secondly, and presupposing a negative answer to the first inquiry, we must determine whether the facts which may be proved by admissible evidence state an occurrence."   *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (per curiam) (quotations omitted).

At present, the only reason American National claims that the subject crash is not a covered "occurrence" under the Policy is due to the exclusion for "bodily injury" to "passengers" that occurs when an insured aircraft is engaged in "aerial advertising."   Fields "stringently opposes th[e] contention" that "LaFleur was a 'passenger' in the aircraft at the time of the crash."   (Doc. 13 at 2).   She asserts

that "[s]he will at the appropriate time prove that Mr. LaFleur was not a passenger for purposes of aerial advertising as defined in the policy[, but] will on the contrary develop evidence in the underlying wrongful death case that will prove Mr. LaFleur was an occupant on that occasion *as an applicant considering employment with Gulf Coast as a pilot*[,] an invitee evaluating the requirements of the position and the quality and condition of the airplane." (*Id.*). Therefore, Fields contends, LaFleur "was <u>not</u> on board for purposes of 'aerial advertising,' and was <u>not</u> a mere social guest, licensee, or 'passenger.' " (*Id.*). Fields asserts that "the passenger status issue in this declaratory judgment case … is the principal issue in the underlying wrongful death action…" (*Id.* at 3).

The Policy defines "aerial advertising" as "the use of the aircraft for the purpose of or in conjunction with the aerial towing of advertising banners and/or signs ('advertising apparatus') for which [the insureds] make a charge to others for such use[, and also] the use of the **aircraft** for the training of pilots for aerial advertising operations regardless of whether or not a charge is made for such use." (Doc. 10 at 5). Therefore, whether the aircraft was engaged in "aerial advertising" at the time of the crash could conceivably have some bearing on LaFleur's legal status with Gulf Coast and Collins at the time of the crash (and therefore the duty of care owed him).[19] However, nothing in Fields's complaint (Doc. 13-1) indicates

---

[19] On the other hand, LaFleur's status *vel non* as an "invitee" appears irrelevant to a determination of whether he was a "passenger" under the Policy, since the Policy defines that term as "mean[ing] any person who is in the aircraft or getting in or out of it." (Doc. 10 at 6). This would appear to cover all occupants of the aircraft at the time of the crash, whether they were employees, invitees, licensees, social guests, or under some other legal relationship with Gulf Coast and Collins.

that the aircraft was in fact engaged in "aerial advertising" at the time of the crash. At most, Fields alleges that "at the time of the crash," the pilot "was acting as an agent, servant, and/or employee" of Gulf Coast and Collins, without specifying how. (*Id.* at 2). Because the applicability of the only coverage exclusion at issue is not apparent from the face of Fields's complaint, it appears unlikely at this time that the Court will have to look beyond Fields's complaint in determining whether American National has a duty to defend Gulf Coast and Collins in the wrongful death action. *Cf. Tanner*, 874 So. 2d at 1064 ("This Court has never held that, even though the allegations of a complaint *do* allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend.").

Thus, there is presently little chance that a declaration as to American National's duty to defend "would increase the friction between our federal and state courts and improperly encroach on state jurisdiction" in the State Court Action (*Ameritas* factor 5). Given the limited review and uncomplicated legal considerations that appear necessary to decide the duty-to-defend issue, doing so is also unlikely to serve a useful purpose in clarifying the legal relations in the State Court Action (*Ameritas* factor 3), factual development in the State Court Action does not appear important to an informed resolution of this case (*Ameritas* factor 7), and the state trial court is not in any better position to conduct such review than this Court (*Ameritas* factor 8). A declaratory judgment on the duty-to-defendant claim also would not settle the controversy in the State Court Action (*Ameritas* factor 2),

as whether Gulf Coast and Collin are ultimately liable for LaFleur's death will remain unanswered.

The Defendants "in no way contend[] that American National filed this declaratory judgment action for the purpose of 'procedural fencing' " (Doc. 13 at 14) (*Ameritas* factor 4), and the undersigned finds no reason to independently conclude otherwise. Moreover, it is not apparent that there is a better or more effective alternative remedy to obtaining a resolution of the duty-to-defend issue (*Ameritas* factor 6). Indeed, as American National is currently defending Gulf Coast and Collins in the State Court Action under a reservation of rights, any delay in resolving the issue results in American National having to spend more money it might not ultimately owe under the Policy. Finally, there are no other factors apparent from the record that would weigh substantially in favor of abstaining from hearing the duty-to-defend claim. Accordingly, the undersigned recommends retaining jurisdiction over American National's duty-to-defend claim.[20]

That leaves the question of what to do with the unripe duty-to-indemnify claim. Upon consideration, the undersigned will recommend that the appropriate course of action at this early juncture be to simply stay this case as to the

---

[20] The undersigned expressly declines the Defendants' invitation "to find and declare that a request for a discretionary declaratory judgment should give way to an Alabama citizen's guaranteed right to a trial by jury." (Doc. 13 at 15). Not only does American National have its own right to bring this case, since the Declaratory Judgment Act "allow[s] prospective defendants to sue to establish their nonliability[,]" the Act also "specifically preserves the right to jury trial for both parties." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959). Thus, Fields would be entitled to have a jury decide issues regarding LaFleur's relationship with Gulf Coast and Collins at the time of his death regardless of whether that issue is decided here or in the State Court Action.

duty-to-indemnify claim while proceeding to determine the duty-to-defend claim. *See Associated Indus. Ins. Co. v. Four Four, LLC*, No. 2:17-CV-103-WKW, 2018 WL 2946397, at *7 (M.D. Ala. June 12, 2018) (Watkins, C.J.) ("The insurers argue that there is no blanket rule that the duty to indemnify always has to await the outcome of the trial of the underlying case, and that it instead depends upon the facts of the case and the coverage defenses being asserted. This may be true, but it is too early to tell on which side of the rule this case falls. And anyway, it is a question to which there need not be an answer right now. Because the duty to defend is indeed more extensive than the duty to indemnify, it may very well be that determining the first issue will resolve the second if no duty to defend is found. Or, if the court determines that there is a duty to defend, it may well be appropriate not to then reach the further issue of duty to indemnify. But those are questions for another day. For now it is enough to find that both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined. At that time the parties will be free to make any motions they like concerning the indemnity question." (citations and quotations omitted)); *Pa. Nat. Mut. Cas. Ins. Co. v. King*, No. CIV.A. 11-0577-WS-C, 2012 WL 280656, at *5 (S.D. Ala. Jan. 30, 2012) (Steele, J.) (similar). Given that discovery regarding the duty-to-indemnify claim is likely to be largely duplicative of discovery in the ongoing State Court Action, the stay of that claim should apply to both discovery and addressing the merits.

Once the duty-to-defend claim has been decided, the Court can re-evaluate how best to proceed with the duty-to-indemnify claim in light of the procedural posture of the State Court Action at that time.[21]

### III.    *Conclusion*

In accordance with the foregoing analysis, and pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), it is **RECOMMENDED** that the Defendants' motions to dismiss, stay, and/or abstain (Docs. 12, 17) be **GRANTED in part** and **DENIED in part**, as follows:

1. The motions should be **GRANTED** as to a stay of American National's duty-to-indemnify claim, including both discovery and adjudication of the merits, until further order of the Court; and

2. The motions should be otherwise **DENIED**.

**DONE** this the 29th day of August 2019.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] Of course, if at any time developments in the State Court Action occur bearing on the ripeness of the duty-to-indemnify claim, the parties are free to bring those development to the Court's attention, and request appropriate relief thereon, by filing appropriate notice and/or motions.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.