IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY, ) <br> AND CASUALTY COMPANY, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> GULF COAST AERIAL, LLC *f/k/a* ) <br> *Gulf Coast Aerial Advertising, LLC et al.*, ) <br>     Defendants. ) | CIVIL ACTION NO. 1:19-cv-198-KD-N |

**ORDER**

This matter is before the Court on Defendants Gulf Coast Aerial, LLC's and Richard Michael Collins' Partial Motion for Summary Judgment (Doc. 61); Plaintiff American National Property and Casualty Company's Response (Doc. 66); and Defendants Gulf Coast Aerial, LLC's and Richard Michael Collins' Reply (Doc. 69). Also before the Court is Plaintiff American National Property and Casualty Company's Partial[1] Motion for Summary Judgment and supporting documents (Docs. 62, 63, 64); Defendants Gulf Coast Aerial, LLC's and Richard Michael Collins' Response (Doc. 67); and Plaintiff American National Property and Casualty Company's Reply (Doc. 68).[2]

**I.    Background**[3]

---

[1] Though not styled as a partial motion for summary judgment, ANPAC moves for summary judgment only as to its duty to defend Defendants. (Docs. 62, 63). Thus, ANPAC's motion is also a partial motion for summary judgment.

[2] Defendants also filed a Motion to Strike ANPAC's Exhibit A to its Reply (Doc. 68-1), asserting 1) Exhibit A was not authenticated; 2) It was offered for an improper reason; and 3) all facts supported by Exhibit A are disputed. (Doc. 70). ANPAC responded. (Doc. 71). The Court did not rely on Exhibit A to ANPAC's Reply in reaching its conclusion herein. Therefore, Defendants motion to strike is **MOOT**.

[3] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

On August 4, 2018, an aircraft owned and operated by Defendant Gulf Coast Aerial, LLC (Gulf Coast) crashed shortly after takeoff. The aircraft was piloted by George Bancroft Marshall (Marshall); Bradley John LaFleur (LaFleur) was also in the aircraft. Both men were killed in the crash. Thereafter, Leslie Fields (Fields), as the administrator for the estate of LaFleur, filed the underlying state court action currently pending in the Circuit Court of Baldwin County, Alabama (Case No. 05-cv-2018-901313) to recover for LaFleur's death. The complaint has been amended; the Fourth Amended Complaint (the Complaint) is the operative complaint. (Doc. 64-1 (the Complaint)).

The subject aircraft was insured by Plaintiff American National Property and Casualty Company (ANPAC). The insurance policy (Policy No. AC-03158-00) (the Policy) was issued to Gulf Coast "and its individual executive officers and members." (Doc. 10-1 (the Policy)). Collins was an insured under the Policy.

On April 18, 2019, ANPAC filed this declaratory judgment seeking a declaration of rights as to its duty to indemnify and defend its insureds in the underlying wrongful death action. (Doc. 1; Doc. 10).[4] Thereafter, in May 2019, Defendants moved to have this case dismissed, stayed or in the alternative to have this Court abstain from entertaining the case. (Docs. 12, 17). Following briefing, this Court determined that ANPAC's duty to indemnify was not yet ripe for consideration and accordingly stayed that issue. (Doc. 30). Now, the parties have filed cross motions for summary judgment asking this Court to decide the remaining issue—whether ANPAC has a duty to defend Defendants in the underlying state court action.

**II.   Standard of Review**

---

[4] ANPAC was ordered to correct certain deficiencies in its original complaint (Doc. 1) and did so by filing Doc. 10. Therefore, Doc. 10 is the operative complaint in this declaratory judgment action.

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. Jean–Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. Id. Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); see also Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. ... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. Celotex, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell v. Valley Forge Dental Assocs., 276 F.3d 1275, 1279 (11th Cir. 2001).

The fact that both parties have filed partial motions for summary judgment does not alter the ordinary standard of review. See Chambers & Co. v. Equitable Life Assurance Soc., 224 F.2d

338, 345 (5th Cir. 1955)[5] (explaining that cross-motions for summary judgment "[do] not warrant the granting of either motion if the record reflects a genuine issue of fact"). Rather, the Court will consider each motion separately "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." 3D Med. Imaging Sys., LLC v. Visage Imaging, Inc., 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017) (quoting Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538–39 (5th Cir. 2004)) (internal quotations omitted). Accord Wilson v. Browne, 2012 WL 1605877, at *2 (N.D. Fla. April 20, 2012).

In some cases, "[c]ross motions for summary judgment may be probative of the nonexistence of a factual dispute." Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983). But, the existence of cross motions for summary judgment "do[es] not automatically empower the court to dispense with the determination whether questions of material fact exist." Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotations omitted). This is so because "each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts. Indeed, cross-motions for summary judgment may demonstrate a genuine dispute as to material facts as often as not." Bricklayers, Masons and Plasterers Intern. Union of America, Local Union No. 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975).

## III.  **Relevant Law**

As an initial matter, because this is a diversity action, state substantive law determines whether ANPAC has a duty to defend Defendants. See Klaxon Co. v. Stentor Electric

---

[5] The Eleventh Circuit, sitting en banc, adopted as binding precedent all decisions rendered by the Fifth Circuit prior to close of business on September 30, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Manufacturing Co., 313 U.S. 487 (1941); Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) ("[A] federal court sitting in diversity will apply the choice of law rules for the state in which it sits.") (citation omitted); Grupo Televisa, S.A. v. Telemundo Communications Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007) (same). Alabama law applies the doctrine of *lex loci contractus* to contract claims. Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004). The parties do not dispute that the Policy was formed in Alabama or that Alabama was the site of the conduct giving rise to the harms alleged in the underlying action. The Court therefore applies Alabama law *infra*. See id. ("The doctrine [of *lex loci contractus*] states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.") (internal quotation marks and citation omitted).

An insurance company has two general duties under a policy of insurance: a duty to defend and a duty to indemnify. Here, ANPAC presently seeks only a judicial declaration that it owes no duty to defend its insureds. In Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1009-10 (Ala. 2005), the Alabama Supreme Court explained the duty to defend as follows:

> 'It is well settled "that [an] insurer's duty to defend is more extensive than its duty to [indemnify]." United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985) (citations omitted). Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. *Id.* at 1168. If the allegations of the injured party's complaint show an accident or an occurrence **within the coverage of the policy**, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. Ladner & Co. v. Southern Guar. Ins. Co., 347 So.2d 100, 102 (Ala.1977) (citing Goldberg *244 v. Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948)). However, "[t]his Court ... has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured." Ladner, 347 So.2d at 103. In Pacific Indemnity Co. v. Run–A–Ford Co., 276 Ala. 311, 161 So.2d 789 (1964), this Court explained:

5

> We are of [the] opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence....
>
> '276 Ala. at 318, 161 So.2d at 795; see *Ladner,* 347 So.2d at 103 (quoting this language). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Blackburn v. Fidelity & Deposit Co. of Maryland,* 667 So.2d 661, 668 (Ala.1995)(citing *United States Fid. & Guar. Co. v. Armstrong,* 479 So.2d 1164 (Ala.1985)) (other citations omitted).'

Hartford Cas. Ins. Co., 928 So.2d at 1009-10 (quoting Acceptance Insurance Co. v. Brown, 832 So.2d 1, 14 (Ala. 2001))(emphasis added).[6]

In coverage disputes, the insured bears the burden of proving coverage exists. Jordan v. Nat'l Acc. Ins. Underwriters Inc., 922 F.2d 732, 735 (11th Cir. 1991). On the other hand, "to invoke an exclusion in denying a defense, the insurer bears the burden of pointing to allegations of the complaint or other available evidence by which the claim was clearly excludable." Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 605 (11th Cir. 1993) (citing Armstrong, 479 So.2d at 1168); DiBenedetto v. Allstate Insurance Company, 469 F.Supp.3d 1243, 1246-47 (N.D. Ala. 2020) (same).

IV.   **Discussion**

1.   **Coverage on the Face of the Complaint**

First, the Court must look to the allegations in the complaint to determine if, on its face, the complaint alleges an accident or an occurrence "within the coverage of the policy." Hartford

---

[6] "The provisions of an insurance policy must be construed in light of the interpretation that ordinary [people] would place upon the language used in the policy." Edwards Dodge, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co., 510 So. 2d 225, 226 (Ala. 1987) (quoting Newman v. St. Paul Fire & Marine Ins. Co., 456 So. 2d 40 (Ala. 1984)). Any ambiguity in a policy is to be construed liberally in favor of the insured. Hartford Cas. Ins. Co., 928 So. 2d at 1011.

at 1009. For an event to be covered per the Policy,[7] the aircraft must have been used for either: 1) "pleasure or business related purposes for which no charge is made for such use;" 2) aerial advertising for "which you make a charge to others for such use;" or 3) for training pilots for advertising with or without charge. See (Doc. 10-1 at 3, 5 (the Policy)).

As to the second and third categories of coverage noted *supra*, the Complaint does make reference to banner towing operations. See e.g., (Doc. 64-1 at 9, 10, 13-15 (the Complaint)). But, Defendants contend that "[w]hile the Wrongful Death Complaint does make certain allegations concerning banner towing, there is no allegation that Gulf Coast or Collins charged others for the use of the plane or that the plane was in use for training of pilots for aerial advertising operations." (Doc. 61 at 8). In other words, Defendants admit that the Complaint does not allege an event covered by the Aerial Advertising Special Use Endorsement (for which coverage of a passenger for bodily injuries is excluded) on its face. Thus, the Court looks next to see whether the Complaint alleges an event that fits within the only remaining category of coverage: for "pleasure or business related purposes for which no charge is made for such use…."

The Complaint makes no reference to whether a charge was made for the operation in which the aircraft was engaged when it crashed. See generally (Doc. 64-1 (the Complaint)). Accordingly, the Complaint fails to allege a covered event on its face because coverage clearly depends on whether a charge is made. But that is not the end of the inquiry. Per Alabama law, the Court is not "limited to the bare allegations of the complaint" in deciding whether a complaint alleges a covered injury. Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1064 (Ala. 2003) (citing Pacific Indemnity Co. v. Run-A-Ford Co., 161 So.2d 789, 795 (Ala. 1964)). Rather, when the complaint fails to allege facts that invoke coverage, as in this case, the Court looks to "facts

---

[7] "There is no coverage under the policy if the aircraft: is used for any purpose not stated in Item 10 of the Coverage Identification Page." (Doc. 10-1, p. 4)

which may be proved by admissible evidence." Id. (citing Pacific Indemnity Co. v. Run-A-Ford Co., 161 So.2d at 795). Thus, the Court considers extrinsic evidence to determine whether the occurrence falls within the coverage category of flights for pleasure or business related purposes for which no charge was made. (Doc. 10-1 at 3 (the Policy) (emphasis added)).

### 2. Coverage Based on Admissible, Extrinsic Evidence

ANPAC contends, and submits extrinsic evidence in support, that the subject flight was for a charge. (Doc. 63 at 10). In response, Defendants advance two arguments with respect to the "charge" element. First, Defendants contend the amount charged here constituted "expense-sharing" and thus does not meet the definition of "charge" per the Policy. (Doc. 67 at 9-11). Second, Defendants aver that even though they intended to charge the customer (Chute for the Skye) for the flight, payment was never *actually* collected after the aircraft crashed. (Id. at 11-12). So, per Defendants, this too shows no "charge" occurred. Each is addressed in turn.

There is not a factual dispute here regarding whether Defendants planned on charging Chute for the Skye for the subject flight. (Doc. 68 at 18; Doc. 67 at 11). The issue instead focuses on the meaning of "charge" per the Policy. To decide that issue, the Court must construe the meaning of that term. See State Farm Mut. Ins. Co.v. Harris, 882 So.2d 849, 852 (Ala. 2003) (interpreting the meaning of "relative" per the insurance policy). "Interpretation of an insurance contract presents a question of law" which the Court decides. Id. (citing Holt v. State Farm Ins. Co., 507 So.2d 338 (Ala. 1986)).

First, Defendants submit no evidence to support that this was a passenger expense-sharing arrangement. Rather, Defendants argue that in the past when it invoiced Chute for the Skye $250 per flight, this cost was just "intended to cover the cost of its flights;" Gulf Coast did not intend to profit from these flights. (Doc. 67-2 at 2 (Aff. Collins at 2)). So, according to Defendants, these

"charges" made to Chute for the Skye were part of an expense-sharing arrangement that removes this cost from the definition of "charge" as anticipated by the Policy. In other words, Defendants contend there is coverage because the flight was for "pleasure or business related purposes where no charge [was] made for such use." (Doc. 10-1 at 3 (the Policy)). In support, Defendants cite several cases where the court determined that the flight was conducted pursuant to an expense sharing arrangement with the occupants of the plane and thus no "charge" was made for the flight. However, none of these cases involved a flight for a commercial venture for a person not occupying the plane. Thus, the cited cases are clearly distinguishable.

"The appropriate standard for determining whether a charge was made depends upon the motivating reason for making the flight…. '[W]hen a charge is made for something, there is a distinct connotation that there is a quid pro quo.'" Pacific Indemnity Co. v. Acel Delivery Service, Inc., 485 F.2d 1169, 1172 (5th Cir. 1973) (citing Houston Fire & Cas. Co. v. Ivens, 338 F.2d 452, 455 (5th Cir. 1964)).[8] "A charge may thus be considered as the price demanded for a thing or service." Id. "Nor is it important whether [Defendants made] a profit…" Johnson v. Allstate, 505 So.2d 362, 367 (Ala. 1987) (determining whether a fee paid for transportation constituted a charge per the automobile policy). There is no dispute that a charge was expected in consideration for towing a banner for Chute for the Skye. Moreover, there is no dispute that the purpose of the flight was to tow the banner for Chute for the Skye. Thus, Defendants expense-sharing argument fails.

Second, Defendants argue no "charge" occurred because they chose to forgo charging Chute for the Skye for the subject flight that crashed before the aerial advertising was completed. (Doc. 69 at 8). Defendants state that anticipated or intended charges are insufficient under the

---

[8] All decisions of the former Fifth Circuit rendered prior to October 1, 1981 serve as binding precedent on the current Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981).

9

policy and that ANPAC could have been clearer in the Policy if their goal was to include such arrangements in the meaning of "charge." (Doc. 69 at 8). Defendants also assert that the language is ambiguous because it is "susceptible to more than one reasonable meaning" so it should be construed in Defendants favor. (Id.).

In Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co., 817 So.2d 687, 692 (Ala. 2001), the Alabama Supreme Court discussed the issue of ambiguity in an insurance policy:

> If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. *American & Foreign Ins. Co. v. Tee Jays Mfg. Co.,* 699 So.2d 1226 (Ala.1997). The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. *Tate v. Allstate Ins. Co.,* 692 So.2d 822 (Ala.1997). While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. *Kelley v. Royal Globe Ins. Co.,* 349 So.2d 561 (Ala.1977). Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it. *Western World Ins. Co. v. City of Tuscumbia,* 612 So.2d 1159 (Ala.1992).
>
> ***
>
> Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.,* 584 So.2d 1316 (Ala.1991).... If [a word or phrase] was defined we would defer to the definition provided by the policy. *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.,* supra. [If] it is not, we must determine the meaning of the phrase. An undefined word or phrase in an insurance policy does not create an inherent ambiguity. To the contrary, where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it. *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.,* 628 So.2d 560 (Ala.1993).

817 So.2d at 692.

The Policy does not define "charge is made" or "charge" more specifically but this language is "not unusual, technical, or otherwise unclear." Nationwide Mut. Ins. Co. v. Thomas, 103 So.3d at 804 (finding the terms used in a carry-for-a-fee exclusion "not unusual, technical, or

otherwise unclear"). And the fact that Defendants interpret the Policy differently than ANPAC, does not make the Policy ambiguous. See Twin City Fire Ins. Co., 817 So.2d at 692 (citing American & Foreign Ins. Co. v. Tee Jays Mfg. Co., 699 So.2d 1226 (Ala. 1997)).

Defendants ask the Court to construe this language in such a way that "charge is made" means "payment is completed." The Court finds "charge is made" to "mean the person offering a service puts the recipient on notice that there will be some amount assessed against him for providing that service; in other words, the service would not be provided for free." U.S. Fire Ins. Co. v. Crowley & Assocs., 359 S.E.2d 160, 162 (Ga. Ct. App. 1987). Here, Defendant Collins testified that the financial arrangement between Chute for the Skye and Gulf Coast was that Gulf Coast was "to tow their banner and they were to pay us for our services." (Doc. 66-1 at 5 (Dep. Collins at 14)). Even though Defendants chose ultimately not to collect money from Chute for the Skye, the fee arrangement constituted a charge. Thus, the subject crash does not fall within the "pleasure or business related purposes for which no charge was made" covered event category.

**3. Claims that Do Not Reference "Banner Towing"**

Defendants assert "even if ANPAC does not have the duty to defend certain claims because the Wrongful Death Complaint alleges banner tow operations… Gulf Coast and Collins remain entitled to a defense for the claims [claims one and two] that do not allege aerial advertising." (Doc. 67 at 12). In advancing their argument, Defendants cite Fields' Response to ANPAC's earlier motion to dismiss in which Fields states "Bradley John LaFleur died from Defendants' negligence and/or wantonness in activities *other than aerial advertising*." (Id. (citing Doc. 48 at 2) (emphasis in original)).

In support, Defendants also cite Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1064 (Ala. 2003) to assert that ANPAC may have a duty to defend some claims that are covered

11

even though it does not have a duty to defend acts not covered by the policy. (Doc. 67 at 12). The policy at issue in Tanner involved an exclusion for intentional torts. The complaint alleged intentional misrepresentation (among other claims) which were not covered occurrences, but also alleged innocent misrepresentation and reckless misrepresentation. Tanner, 874 So.2d 1064-66. The Court held that State Farm had a duty to defend the claims that were not intentional torts. Id. at 1067. In other words, because there were alternative legal theories, the policy provided coverage. Id. The undersigned is unable to understand how this supports Defendants' contention that ANPAC owes a defense as to Count one and two just because banner towing is not mentioned in these counts.

To be entitled to a defense, claims one and two in the Complaint would still have to be covered events per the Policy. As stated *supra*, for an event to be covered the aircraft had to be used for: 1) "pleasure or business related purposes for which no charge is made;" 2) aerial advertising for "which you make a charge to others for such use;" or 3) for training pilots for advertising with or without charge. See (Doc. 10-1 at 3, 5 (the Policy)). Again, if the claim does not fall under the aerial advertising endorsement, as Defendants have strenuously argued, then it must be covered under the use of the plane for "pleasure or business related purposes for which no charge is made." And, as previously stated, the Complaint (even considering just counts one and two) does not allege facts to support coverage, there are no facts from which coverage could be implied, and the extrinsic evidence indicates otherwise.

### V.     Conclusion

For the reasons discussed herein, the Court finds that ANPAC has no duty to defend. Accordingly, Defendants Gulf Coast Aerial, LLC's and Richard Michael Collins' Motion for

Summary Judgement (Doc. 61) is **DENIED;** American National Property and Casualty Company's motion for summary (Doc. 62) is **GRANTED**.

**DONE** and **ORDERED** this the **31st day** of **March 2021**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**